**CLAGETT, Plaintiff, v. DAVIS, Defendant.**

Common Pleas Court, Muskingum County.

No. 37403.   Decided December 23, 1953.

Zinn & Tate, Zanesville, Dorfmeier & Dorfmeier, Dayton, for plaintiff.
Power, Griffith & Jones, Columbus, T. M. Potter, New Lexington, Meyer, Johnson & Kincaid, Zanesville,, for defendant.

**OPINION**

By CROSSLAND, J:

In reviewing the pleadings, evidence and briefs, and the report of the Special Master Commissioner, the Court first acknowledges and commends the exceedingly able contributions made to the record on the part of all concerned, concerning not only an intricate but a novel question in Ohio.

Without pretending to acquire all the close hand familiarity with the very considerable detail of facts adduced, partly of impressions gained and credibility ascribed in connection with witness examinations— some in person and much that was highly technical in deposition—the Court will relate its own underlying approach to the chief issue involved.

Throughout, the Court's own view of the legal question of possible fiduciary responsibility has been to maintain an open mind and to be

receptive of all pertinent evidence that might lead to a possible determination in the light of whatever rule of law should seem equitable and just under all the facts and circumstances, rather than to assume and accept as the basis for determination factually any preconceived rule that might obtain elsewhere.

To state the Court's approach another way—in the absence of an already settled and followed rule of law in Ohio, the Court's view was that in the interest of justice the factual situation might impel it to reach out and seek to encompass the transaction within the purview of possible authority to afford relief and in such event the Court would then seriously consider an appropriate rule for doing so. Or, in other words, until the Court knew all the facts and circumstances in the instant case it was not prepared to assert its view of what it might consider the rule ought to be, although, at the same time, also appreciating the layman's point of view that citizens should be able reasonably to find existing legal guide posts whenever possible. It is rather strange, considering population and business, that Ohio apparently has no reported precedent directly and fully in point.

For more than twenty years plaintiff and defendant were two of six original owners of fifty shares each of an Ohio corporation, which in turn owned 90% of an Oklahoma corporation, which in turn owned principally oil royalties in a certain Texas tract of 691 acres. In addition, the Ohio corporation owned certain Ohio and Michigan oil property interests of no significant controversy herein. In essence, plaintiff's sole complaint is that defendant failed to inform him fully concerning the Texas property of the Oklahoma corporation, although the fact of the Oklahoma corporation was fully known to the plaintiff for the more than twenty years of its existence, from the inception of the entire enterprise.

There is no claim or suggestion that defendant was unable to obtain whatever information about any property of either corporation he might have desired, had he so desired, or that any such information was unavailable or unobtainable, but only that defendant failed to state affirmatively in his correspondence with plaintiff matters ascertained by plaintiff some months after defendant acquired plaintiff's said stock. The same records, examined and testified about by plaintiff's witnesses, presumably were always open to examination and inquiry by plaintiff or his representative before he elected to sell his said stock to defendant.

Most of the voluminous testimony revolves about the question of December 1, 1948, valuation of the Texas royalties of the Oklahoma corporation, in terms of dollar amount and exclusion thereof from the Ohio corporation share value computation. Whatever defendant may have thought or believed in August or November, 1948, concerning dollar value, as compared or contrasted with what he said in either of two letters, it was essentially a question of dollars in plaintiff's consideration of defendant's proposal to buy and not of underlying assets. Nothing was said or asked regarding specific property or properties. Since defendant was offering to buy and plaintiff considering selling at $150 a share was defendant rightfully bound to suggest, if he then believed that the fifty shares were worth more than $150 a share, the precise

value per share which he then believed it to be worth? One thing defendant appeared to make quite clear was that he was interested for himself in plaintiff's stock to the extent only of a willingness on his part to pay therefor $150 per share and no more.

The record discloses no inquiry or any apparent interest on plaintiff's part to seek to ascertain what value, if any, in excess of $150 a share plaintiff's stock might have had. Moreover, the situation then prevailing between plaintiff and defendant was not one purely of money value per share in the abstract. As a minority stockholder at that time plaintiff could well have considered that proportionate to the whole three hundred shares outstanding his own continued ownership of fifty shares held less value to him than the same shares would be to defendant, even if he had been fully informed concerning the underlying assets. Is it contended that defendant could acquire plaintiff's fifty shares only by paying to plaintiff no less than their controverted full value to defendant, or, if less than that, then how little or how much less?

It is readily conceivable that if a Court were to undertake to adopt a strict fiduciary accountability by a director or officer purchaser of minority stock to one of two or three remaining original stockholders serious obstacles would be interposed either to mutually satisfactory continued stockholding relationship or the final assurance of stock sale and transference. In a small company of relatively small holdings, where individuality is the essence of origin of the enterprise, stockholders are accustomed to dealing with each other personally and informally, as otherwise they would not have associated themselves together in the first place, even though ordinarily one or two are generally known in the very beginning to be considerably more conversant with the nature and subject matter of the venture than are the others.

At what point and for what legal cause should a Court step in between two mature men of intelligence and undertake to put aside their own voluntary dollar consummation in a transaction concerning an original equal corporate share interest of over twenty years standing?

While the foregoing considerations do not excuse unconscionable conduct nor warrant an invitation to fraud, they do place considerable dependence upon an individual stockholder's own separate inclination and determination to seek to ascertain to his own independent satisfaction just how and to what extent he desires to proceed with reference to his share of the business, to which he himself is already considered to be much more closely related than he is to his stock certificate. If he wants to rely upon another stockholder with whom he has chosen to associate himself from the beginning, why should such other stockholder be liable therefor, in the absence of actual fraud or other personal dishonesty?

If the Court were constrained to enteretain relief on a question of differences of opinion as to value or even a conceded difference of value, in case of small companies of few stockholders, to what extent would close corporations retain value of longer desirability to those who thus engage themselves and their capital together in order to initiate and operate small corporate businesses in the interest of themselves and those whom they serve?

Granting that if plaintiff's stock was actually worth $500 a share, for example, on December 1, 1948, and that if plaintiff then so knew he would likely not have sold it for $150 a share, if he then preferred to keep it at that price, it is obviously now not sufficient that he regrets that he then sold it rather than retained it. It is not sufficient that he offer to return to the stock purchaser the payment of the purchase price merely because he later regretted the sale. The defendant and not the plaintiff must have been at fault legally for the fact that the plaintiff willingly and voluntarily sold his shares to the defendant. Such an actual or potential liability therefor on defendant's part seems to this Court to be greatly outweighed by the clear implication of the greatly increased hazard that would attend personal participation in the creation of small corporations and their economic function in capitalistic enterprise, at least in the case of original incorporators of equal share participation.

For the foregoing reasons and without disagreeing with the findings of the Special Master Commissioner as to failure of proof of injury in his evaluation of the evidence and credibility of witnesses, the Court sustains the conclusion of dismissal of plaintiff's claim and grants judgment for the defendant at plaintiff's costs, including allowance of fee of $850.00 to said Commissioner; with exceptions to plaintiff.

Journal entry may be prepared by defendant counsel embodying the foregoing conclusions of law of the Court and findings of fact of the Special Master Commissioner consistent therewith, submitted to plaintiff counsel for consideration of approval and then submitted to the Court for its approval for filing.